UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RICHARD MORRIS,<br><br>                Plaintiff,<br><br>    v.<br><br>BEAR LAKE COUNTY, an Idaho political subdivision; BEAR LAKE COUNTY SHERIFF'S DEPARTMENT, an agency of an Idaho political subdivision; SHERIFF BART HESLINGTON, individually and in his official capacity; CHIEF DEPUTY SHERIFF GREGG KNUTTI (retired), individually and in his official capacity; DEPUTY SHERIFF MATT KUNZ, individually and in his official capacity; RESERVE DEPUTY ROBERT PELTO, individually and in his official capacity; JOHN DOE(s) and JANE DOE(s) (officers)<br><br>                Defendant(s). | Case No. 4:23-cv-00327-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

Before the Court is Plaintiff's Motion for Extension of Time (Dkt. 32) and Defendants' unopposed Motion for Summary Judgment (Dkt. 28). For the reasons explained below, the Court will deny Plaintiff's motion for extension of time and

grant summary judgment in favor of Defendants.

## BACKGROUND

### 1. Factual Background

This suit springs from a property dispute between plaintiff Richard Morris and his neighbor Robert Olson, and the subsequent intervention by Bear Lake County law enforcement officials.

Neither Mr. Morris nor Mr. Olson own the road they each use to access their individual properties on Mill Hollow Road, nor do they own the drainage ditch which runs parallel to the road easement. *Def. Statement of Facts*, ¶ 10, Dkt. 28-2. The events leading up to the dispute are not entirely clear from the record, but Mr. Morris apparently maintained the ditch for many years to prevent the road from washing out. *Morris Dep.* at 53-70, Dkt. 28-11. According to Mr. Morris, the problems began in 2018 when Mr. Olson buried the ditch and refused to dig it back out. *Id.* at 69. Concerned about damage to the road, Mr. Morris contacted the Bear Lake County Sheriff's Department in 2019, but they declined to intervene. *Id.* at 83. In 2020, Mr. Morris re-excavated and expanded the ditch while Mr. Olson had a guest visiting. *Def. Statement of Facts*, ¶¶ 11-12, Dkt. 28-2. The guest was unable to leave the property due to the size of the ditch, and Mr. Olson called the sheriff's department. *Id.*

Chief Deputy Sheriff Gregg Knutti visited Mill Hollow Road to inspect the

site. *Id.* ¶ 13. While Officer Knutti did not charge Mr. Morris at that time, he did write and submit a report for the county prosecutor's consideration. *Id.* ¶ 14; *Knutti Decl., Ex. A*, Dkt. 28-7. The county prosecutor, Adam McKenzie, then requested a visit to the property to "view the ditch for myself." *McKenzie Decl.*, ¶ 7, Dkt. 28-3. Two days later, both Officer Knutti and Mr. McKenzie visited the site of the ditch incident on Mill Hollow Road. *Def. Statement of Facts*, ¶ 15, Dkt. 28-2; *McKenzie Decl.*, ¶ 7, Dkt. 28-3. Mr. McKenzie also reviewed records regarding easements on the property. *Def. Statement of Facts*, ¶ 16, Dkt. 28-2.

Based on the police report, the easement information, and his own site visit, the county prosecutor directed that Mr. Morris be charged with one count of misdemeanor Malicious Injury to Property in violation of I.C. § 18-7001. *Id.* ¶ 17. This charge formed the basis of case #CR04-20-398, State of Idaho v. Richard Morris, which the state court dismissed in 2021. *Counsel Decl., Ex. B*, Dkt. 28-12. The case was dismissed because of the state's failure to comply with discovery requests, with the court noting that Mr. Morris had submitted discovery requests "well over one year previous and the State, even as of the date of the hearing, had not responded." *Id.* The court therefore excluded all undisclosed witnesses from trial, which had the effect of dismissing the case. *Id.*

In July 2023, Mr. Morris filed this action for malicious prosecution, failure

to train, and lack of policy against Bear Lake County, the Bear Lake County

Sheriff's Department, and several individual officers based on their intervention in

the ditch dispute. *Compl.* ¶¶ 52, 70, 85, Dkt. 1.

## 2. Procedural Background

Mr. Morris initially retained counsel, but his attorney withdrew several

months into the litigation due to "a breakdown in communication." Dkt. 11. In

September 2023, Mr. Morris submitted notice that he would represent himself.

Dkt. 16. The parties engaged in discovery, and Defendants filed a motion for

summary judgment on October 29, 2024. Mr. Morris did not respond.

In February 2025, the Court determined that Mr. Morris had not received a

notice of his rights and obligations as a pro se litigant—a document provided by

the Court to pro se parties upon the filing of a dispositive motion. The Court sent

the notice to Mr. Morris on February 27, 2025. Due to the delay, the Court

extended the deadline for his response to the motion for summary judgment to 21

days from the date of the notice.

On the day his response was due, Mr. Morris filed a motion for extension of

time. He indicated that he needed time to obtain legal services and explained that

he had been "too busy" to respond to Defendants. Dkt. 32. Defendants filed an

opposition the next day. The Court ordered an expedited schedule for any further

filings, and Mr. Morris did not submit a reply.

## ANALYSIS

### 1.  Motion for Extension of Time

Under Federal Rule of Civil Procedure 6(b), the Court may extend a deadline "for good cause." Whether good cause exists depends on four factors: "(1) the danger of prejudice to the opposing party; (2) the length of delay and its potential impact on the proceedings; (3) the reason for delay; and (4) whether the movant acted in good faith." *Schnuerle v. San Joaquin Valley Coll., Inc.,* No. 1:22-CV-00070-DCN, 2023 WL 1410289, at *1 (D. Idaho Jan. 30, 2023). This analysis weighs strongly against Mr. Morris, so the Court will decline to further extend the deadline for his response to the motion for summary judgment.

The length and reason for the delay most strongly counsel against granting an extension of time. Mr. Morris seeks an open-ended extension of the deadline so that he can find an attorney. But it has been more than a year and half since his attorney withdrew. Mr. Morris' inability to find new representation in that time does not warrant the indefinite postponement of this litigation. He also suggests that this case should be paused until the resolution of a related state civil suit he brought against Mr. Olson, CV04-22-0124. But the merits of that case—which was dismissed with prejudice after a jury trial and is now being appealed—does not bear on Defendants' motion for summary judgment. This matter has been pending

long enough, and there is no justification for more delay.

Further, the extension would prejudice Defendants. Defendants filed for summary judgment at the end of October 2024, and Mr. Morris' response was originally due on November 19, 2024. The Court has already provided a long extension to ensure that Mr. Morris, as a pro se litigant, was properly informed of his rights and obligations. It is unfair to further drag out this litigation, depriving Defendants of the speedy resolution of the action against them.

These factors are enough to necessitate the denial of Mr. Morris's request for additional time. For that reason, there is no need to speculate on whether he acted in good faith. The motion for extension of time is denied, and the Court will treat the motion for summary judgment as unopposed.

## 2.  Motion for Summary Judgment

Turning to the substance, Defendants seek summary judgment on each of Mr. Morris' causes of action: (1) Malicious Prosecution, (2) Failure to Train, and (3) Lack of Policy or Unconstitutional Policy—all brought under 42 U.S.C. § 1983. Because Mr. Morris did not respond to the motion, the Court considers Defendants' asserted facts undisputed.

### A.    Legal Standard

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to summary

judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to a material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). "When the nonmoving party has the burden of proof at trial, the moving party need only point out that 'there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). In evaluating whether the moving party has met this burden, the Court must view the evidence in the light most favorable to the non-moving party. *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017). Importantly, the Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.*

Once the moving party has met its burden, the non-moving party carries the burden to present evidence showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 323. This evidence requires the non-moving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). In other words, the non-moving party cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; instead, the non-moving party must set

forth the "specific facts," supported by evidence, with "reasonable particularity" that preclude summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

Where, as here, a party opposing summary judgment fails "to respond to a fact asserted in the motion" a court may "consider that fact undisputed for the purposes of the motion." *Heinemann v. Scatterberg*, 731 F.3d 914, 917 (9th Cir. 2013). Nonetheless, even when a motion for summary judgment is unopposed, as here, "a district court must determine whether summary judgment is appropriate – that is, whether the moving party has shown itself to be entitled to judgment as a matter of law." *Baxter v. City of Hemet*, 728 F. Supp. 3d 1127, 1146 (C.D. Cal. 2024) (quoting *Leramo v. Premier Anesthesia Med. Grp.*, 2011 WL 2680837, at *1 (E.D. Cal. July 8, 2011)).

### B.    Malicious Prosecution Claim Against All Defendants

Mr. Morris has first alleged a Section 1983 constitutional claim of malicious prosecution against Bear Lake County, the Bear Lake County Sheriff's Department, and the individual officers involved in the investigation.

A plaintiff may bring malicious prosecution claims against a prosecutor, as well as any other person who has "wrongfully caused the charges to be filed." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (quoting *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126—27 (9th Cir. 2002)). To

succeed, the plaintiff must show that (1) "defendants prosecuted him with malice and without probable cause"; (2) "that they did so for the purpose of denying [him] equal protection or another specific constitutional right"; and (3) "that the prior proceedings terminated in such a manner as to indicate his innocence." *Id.* at 1066, 1068 (quoting *Freeman v. City of Santa Ana,* 68 F.3d 1180, 1189 (9th Cir. 1995)). Further, a prosecutor's decision to file a criminal complaint creates a rebuttable presumption that law enforcement officers responsible for the earlier investigation are not liable. *Id.* at 1067 ("The decision to file a criminal complaint is presumed to result from an independent determination on the part of the prosecutor, and thus, precludes liability for those who participated in the investigation or filed a report that resulted in the initiation of proceedings.")

Here, the county prosecutor's decision to charge Mr. Morris creates a rebuttable presumption against liability on the part of the officers who investigated and reported the ditch incident. Mr. Morris has not proffered any evidence to contradict this; for instance, nothing on the record suggests that the prosecutor "acted under pressure from the police or relied on the police investigation and arrest when he filed the complaint instead of making an independent judgment." *Smiddy v. Varney*, 665 F.2d 261, 266 – 67 (9th Cir. 1981), *overruled in part on other grounds by Hartman v. Moore*, 547 U.S. 250 (2006). To the contrary, Mr.

McKenzie inspected the site himself and examined property records before deciding to file charges. This exercise of independent judgment absolves Defendant officers of liability for malicious prosecution.

Even without the presumption of prosecutorial independence, Mr. Morris's claim clearly fails because there was probable cause for the officers to cite him and for Bear Lake County to commence the prosecution. Probable cause exists when "the facts and circumstances within [the defendant's] knowledge are sufficient for a reasonably prudent person to believe that the suspect has committed a crime." *Rosenbaum v. Washoe County,* 663 F.3d 1071, 1076 (9th Cir. 2011). This is an objective inquiry based on the defendant's knowledge at the time that he or she initiated the underlying case. *Id*; *see Werenka v. City of Boise*, No. 1:23-cv-000275-BLW, 2024 WL 4930645, at *1, *2 (D. Idaho Dec. 2, 2024). The burden is on the plaintiff to establish the absence of probable cause.

Mr. Morris was cited for malicious injury to property, which occurs when a person "maliciously injures or destroys any real or personal property not his own." Idaho Code § 18-7001. "Malice" under the statute is defined as "a wish to vex, annoy, or injure another person, or an intent to do a wrongful act." Idaho Code § 18-101(4). A reasonable person could conclude that Mr. Morris committed this offense because he dug out a ditch (destroying) next to the roadway easement (real

property not his own) for the explicit purpose of undoing Mr. Olson's initial filling-in of the ditch (maliciously). The existence of probable cause is fatal to the malicious prosecution claim.

Because of these clear shortcomings, it is unnecessary for the Court to review other problems with Mr. Morris's claim, such as the lack of evidence that the officers acted maliciously, or their entitlement to qualified immunity. Accordingly, summary judgment is granted to all defendants as to the malicious prosecution claim.

### C.     Failure to Train and Lack of Policy Claims Against Bear Lake County and Bear Lake County Sheriff's Department

In addition to his malicious prosecution claim, Mr. Morris brings two additional Section 1983 claims against defendants Bear Lake County and the Bear Lake County Sherriff's Department alleging failure to train and lack of policy.

A municipality may be held liable for the violation of an individual's constitutional rights if "a municipal 'policy' or 'custom' . . . caused the plaintiff's injury." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *see Monell,* 436 U.S. at 694. A plaintiff must prove that "(1) he was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to [plaintiff's] constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Lockett v. County of Los*

*Angeles*, 977 F.3d 737, 741 (9th Cir. 2020). Policies can include "written policies, unwritten customs and practices, and failure to train municipal employees to avoid certain obvious constitutional violations." *Bowman*, 2023 WL 3390446 at *3 (citing *City of Canton v. Harris*, 489 U.S. 378, 387 (1989)).

Mr. Morris's *Monell* claims fail because he was not deprived of a constitutional right. As discussed above, his malicious prosecution claim falls dramatically short. The lack of an underlying constitutional violation means that the municipality cannot be held liable. While this alone necessitates the dismissal of the claims against the County and sheriff's department, the Court also notes that Mr. Morris has not produced any specific evidence of inadequate training or lack of policy. Accordingly, summary judgment is granted to the defendants as to Mr. Morris's remaining claims of failure to train and lack of policy.

## ORDER

**IT IS ORDERED that:**

1.    Defendant's unopposed Motion for Summary Judgment (Dkt. 28) is **GRANTED**.

2.    Plaintiff's Motion for Extension of Time (Dkt. 32) is **DENIED**.



DATED: April 1, 2025

B. Lynn Winmill
U.S. District Court Judge